IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COT'N WASH, INC. and<br>BIG 3 PACKAGING, LLC,<br><br>   Plaintiffs,<br><br>   v.<br><br>HENKEL CORPORATION,<br>THE DIAL CORPORATION, and<br>HENKEL CONSUMER GOODS INC.<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 12-650-SLR |
| COT'N WASH, INC. and,<br>BIG 3 PACKAGING, LLC,<br><br>   Plaintiffs,<br><br>   v.<br><br>THE SUN PRODUCTS<br>CORPORATION,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 12-651-SLR |

Jessica Zeldin, Esquire of Rosenthal, Monhait & Goddess, P.A., Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: Michael J. Bonella, Esquire, Matthew L. Mustokoff, Esquire, Jenna M. Pellecchia, Esquire, and Richard A. Russo, Jr., Esquire of Kessler, Topaz, Meltzer & Check LLP.

J. Clayton Athey, Esquire and Laina M. Herbert, Esquire of Prickett, Jones & Elliott, P.A., Wilmington, Delaware. Counsel for Defendants Henkel Corporation, The Dial Corporation, and Henkel Consumer Goods Inc. Of Counsel: Christopher T. Holland, Esquire, Kenneth E. Keller, Esquire, and Ethan Jacobs, Esquire, of Keller, Sloan, Roman & Holland LLP.

Jack B. Blumenfeld, Esquire and Regina Murphy, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant The Sun Products

Corporation. Of Counsel: Errol B. Taylor, Esquire, Fredrick M. Zullow, Esquire, and Anna Brook, Esquire, of Milbank, Tweed, Hadley & McCloy LLP.

---

**MEMORANDUM OPINION**

Dated: July 11, 2014
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On May 23, 2012, Big 3 Packaging, LLC ("B3P") and Cot'n Wash, Inc. ("Cot'n Wash") (collectively, "plaintiffs") filed suit in this district against Henkel Corporation, The Dial Corporation ("Dial"), and Henkel Consumer Goods, Inc. (collectively, "the Henkel defendants") alleging infringement of United States Patent No. 6,037,319 ("the '319 patent"). (Civ. No. 12-650, D.I. 1) On the same day, plaintiffs asserted the '319 patent against The Sun Products Corporation ("Sun") in a related case before this court.[1, 2] (Civ. No. 12-651, D.I. 1) The '319 patent is directed to "water-soluble packets containing liquid cleaning concentrates." (D.I. 1 at ¶ 10; D.I. 1 at ¶ 10)[3]

The Henkel defendants and Sun (collectively, "defendants") answered plaintiffs' complaints on July 30, 2012 and asserted counterclaims against plaintiffs seeking declaratory judgments of non-infringement and invalidity of the '319 patent. (D.I. 11 at 18-19, ¶¶ 17-27; D.I. 9 at 12-14, ¶¶ 13-26) On August 21, 2012, plaintiffs answered defendants' counterclaims. (D.I. 17; D.I. 13)

Pursuant to the court's scheduling order, "[a]ll motions to . . . amend the pleadings shall be governed by Rule 15," with no specified deadline for amending. (D.I.

---

[1] The court entered a single scheduling order in both cases, which provides for coordinated discovery and claim construction proceedings. (See Civ. No. 12-650, D.I. 22; Civ. No. 12-651, D.I. 20)

[2] In October 2012, plaintiffs filed another complaint in the Eastern District of Pennsylvania against Aqua Chempacs and other defendants (collectively, "the Aqua Chempacs defendants") alleging infringement of the '319 patent. *Big 3 Packaging, LLC v. Aqua Chempacs, LLC, et. al.*, Civ. No. 12-5806 (E.D. Pa.).

[3] When citing documents from both cases, the court lists the D.I. number for 12-650 followed by the D.I. number for 12-651.

22 at ¶ 3; D.I. 20 at ¶ 3) On August 15, 2013, by stipulation, the Henkel defendants filed their first amended answer, affirmative defenses, and counterclaims, adding affirmative defenses of patent invalidity under 35 U.S.C. § 112 and inequitable conduct, as well as a counterclaim of patent unenforceability due to inequitable conduct. (Civ. No. 12-650, D.I. 56 at 14-23, ¶¶ 12-39; *id.* at 39-41, ¶¶ 59-69) On September 3, 2013, plaintiffs answered the Henkel defendants' new affirmative defenses and counterclaim. (Civ. No. 12-650, D.I. 62)

In both cases, fact discovery for the liability phase concluded on January 20, 2014 pursuant to stipulation. (D.I. 111 at 2; D.I. 133 at 2) Expert discovery concluded on March 1, 2014. (D.I. 22 at ¶ 2(d); D.I. 20 at ¶ 2(d)) Trial is scheduled for September 15, 2014. (D.I. 22 at ¶ 11; D.I. 20 at ¶ 11)

Currently before the court are defendants' motions to amend their answers to include counterclaims of false marking under 35 U.S.C. § 292. (D.I. 145; D.I. 152) The Henkel defendants also seek to add counterclaims of false advertising under 15 U.S.C. § 1125 and deceptive trade practices under 6 Del. C. § 2532. (Civ. No. 12-650, D.I. 145) Sun seeks to include a counterclaim of unenforceability due to inequitable conduct before the United States Patent and Trademark Office ("USPTO"). (Civ. No. 12-651, D.I. 152) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. BACKGROUND

### A. Parties

B3P is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business in Philadelphia, Pennsylvania. (D.I. 1 at ¶ 5; D.I. 1 at ¶ 5) B3P is the assignee of the '319 patent. (*Id.*) Cot'n Wash is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania. (D.I. 1 at ¶ 6; D.I. 1 at ¶ 6) Cot'n Wash is an exclusive licensee of the '319 patent in the laundry products field. (*Id.*)

Henkel Corporation, a subsidiary of the German company Henkel AG & Co. KGaA, is a corporation organized and existing under the laws of the State of Delaware with a place of business in Rocky Hill, Connecticut. (Civ. No 12-650, D.I. 1 at ¶ 9) Henkel Consumer Goods, a subsidiary of Henkel Corporation, is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Scottsdale, Arizona. (*Id.* at ¶ 8) Dial, a subsidiary of Henkel Consumer Goods, is a corporation organized and existing under the laws of the State of Delaware, with a place of business in Scottsdale, Arizona. (*Id.* at ¶ 7) Sun is a private company organized and existing under the laws of the State of Delaware, with its principal place of business in Wilton, Connecticut. (Civ. No. 12-651, D.I. 1 at ¶ 7)

### B. Alleged Facts Related to Amendments

#### 1. False marking, false advertising, and deceptive trade practices

In early October 2013, while reviewing plaintiffs' document productions, defendants became aware of emails sent in 2010 and 2011 demonstrating that plaintiffs

had marked their Dropps laundry product with the '319 patent despite knowledge that the liquid cleaning concentrate in the Dropps packets had a water content greater than 7.5%. (*See* Civ. No. 12-650, D.I. 147 at ¶ 3; *id.*, exs. A - D; Civ. No. 12-651, D.I. 154, exs. K, L) Plaintiffs had produced these emails in March, May, and June 2013. (D.I. 147 at ¶ 8; D.I. 158 at 17)

### 2. Unenforceability due to inequitable conduct

In August 2013, plaintiffs asked Sun to stipulate to plaintiffs amending their complaint to include a claim regarding the alleged breach of a confidentiality agreement between Sun and Cot'n Wash. (Civ. No. 12-651, D.I. 153 at 2; Civ. No. 12-651, D.I. 154, ex. B) On September 9, 2013, Sun agreed to the amendment as long as plaintiffs allowed Sun to amend its answer, affirmative defenses, and counterclaims within one month of the close of fact discovery and to postpone consideration of the breach of confidentiality claim until the willfulness and damages phase of litigation. (Civ. No. 12-651, D.I. 154, ex. B) On October 10-11, 2013, plaintiffs agreed to stay the breach of contract claim but did not agree to Sun's proposed stipulation to amend its answer and counterclaims. (*Id.*, ex. D at 2-3)

On October 7, 2013, Sun interviewed Thomas Cicini, a former employee of Dickler Chemical, the original assignee of the '319 patent. (*See id.*, ex. I) Through this interview, Sun became aware of evidence to state a claim of inequitable conduct against plaintiffs; specifically, that Mr. Cicini should have been named as an inventor of the '319 patent, that he demonstrated the product claimed in the '319 patent publicly more than one year prior to the filing of the patent, and that relevant prior art that was

4

not disclosed in the '319 patent application was available at Dickler Chemical prior to the filing of the patent. (*See id.*; *see also* Civ. No. 12-651, D.I. 163, ex. C)[4]

### 3. Interactions among the parties regarding new counterclaims

On October 15, 2013, Sun emailed plaintiffs its proposed amended answer and counterclaims, including new counterclaims of inequitable conduct and false marking. (Civ. No. 12-651, D.I. 154, ex. D at 2) Sun stated it would agree to plaintiffs' amended complaint if plaintiffs consented to Sun's amended answer and counterclaims. (*Id.*) On October 25, 2013, plaintiffs proposed staying the new counterclaims until the damages phase of litigation. (*Id.* at 1) On October 28, 2013, Sun indicated that the inequitable conduct counterclaim would be dealt with during the liability phase, as in the Aqua Chempacs and Henkel cases, but agreed to stay the false marking counterclaim until the damages phase if the parties could come to an agreement regarding the amended pleadings. (*Id.*)

On October 16, 2013, the Henkel defendants proposed that plaintiffs stipulate to the Henkel defendants' second amended answer, affirmative defenses, and counterclaims to include counterclaims of false marking, false advertising, and deceptive trade practices. (Civ. No. 12-650, D.I. 147 at ¶¶ 9-10; *id.*, ex. E) On October 30, 2013, plaintiffs asked the Henkel defendants whether they would agree to leave the false marking claims to the damages phase of the case, and informed them that Sun

---

[4] Also in August 2013, the Henkel defendants and the Aqua Chempacs defendants filed counterclaims of unenforceability due to inequitable conduct, to which plaintiffs agreed by stipulation. (Civ. No. 12-651, D.I. 153 at 2; Civ. No. 12-651, D.I. 154, ex. A) They further agreed to resolve these counterclaims during the liability phase. (*Id.*, ex. D)

5

had agreed to do so "if a resolution [could] be reached on amending the pleadings." (*Id.* at ¶ 11; *id.*, ex. F) On the same day, the Henkel defendants indicated willingness to agree with plaintiffs' proposition as long as plaintiffs stipulated to the filing of all new counterclaims and a resolution on amending the pleadings. (*Id.*) The Henkel defendants suggested that either plaintiffs or Sun draft a stipulation allowing for the amended counterclaims to be filed and determining when in the proceedings the counterclaims would be addressed in each case. (*Id.*)

Nothing was circulated, however, until January 6, 2014, when Sun drafted and sent a proposed stipulation to the Henkel defendants and plaintiffs. (*Id.*, ex. G; Civ. No. 12-651, D.I. 154, ex. F at 2) The Henkel defendants agreed to Sun's proposed stipulation, suggesting only minor revisions. (Civ. No. 12-650, D.I. 147, ex. G) On January 12, 2014, plaintiffs responded to the Henkel defendants and Sun separately, indicating that plaintiffs did not agree to the proposed stipulation and alleging that the proposed counterclaims were "baseless." (*Id.*, ex. J; Civ. No. 12-651, D.I. 154, ex. F at 1) Plaintiffs also indicated in their January 12 email to Sun that they would oppose any motion by Sun to amend the pleadings. (Civ. No. 12-651, D.I. 154, ex. F at 1) On January 27, 2014, after repeated attempts by the Henkel defendants to reach an agreement with plaintiffs regarding the proposed stipulation, plaintiffs alerted the Henkel defendants that they would oppose any motion by them to amend the pleadings as well. (Civ. No. 12-650, D.I. 147, ex. M at 1) On January 31, 2014, Sun filed its motion to amend its answer and counterclaims. (Civ. No. 12-651, D.I. 152) On February 7, 2014, the Henkel defendants filed their motion for leave to file a second amended answer, affirmative defenses, and counterclaims. (Civ. No. 12-650, D.I. 145)

6

## III. STANDARD OF REVIEW

Rule 15(a) of the Federal Rules of Civil Procedure provides that the court "should freely give leave [to amend the pleadings] when justice so requires." Fed. R. Civ. P. 15(a)(2). The factors to consider in weighing a motion for leave to amend are well-settled: (1) whether the amendment has been unduly delayed; (2) whether the amendment would unfairly prejudice the non-moving party; (3) whether the amendment is brought for some improper purpose; and (4) whether the amendment is futile. See Foman v. Davis, 371 U.S. 178, 182 (1962). Courts "ha[ve] discretion to deny a motion to amend for reasons of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Merck & Co., Inc. v. Apotex, Inc., 287 Fed. App'x 884, 888 (Fed. Cir. 2008) (quoting Foman, 371 U.S. at 182).

## IV. DISCUSSION

Defendants contend that their motions to amend should be granted because: (1) they proposed their counterclaims shortly after discovering the evidence to support them and, therefore, any delay is not undue; (2) plaintiffs will not be prejudiced by the amendments because they already have had the opportunity to conduct discovery on related issues and in related cases[5] and, therefore, have the relevant documents in their possession; and (3) the counterclaims are not futile. (D.I. 146; D.I. 153) Plaintiffs

---

[5] Sun argues that plaintiffs already had the opportunity to conduct discovery regarding the inequitable conduct counterclaim in the Henkel and Aqua Chempacs cases, discussed supra.

7

respond that: (1) delay is undue since defendants waited to file their motions until the end of fact discovery; (2) plaintiffs are prejudiced because they did not have the opportunity to conduct discovery on the counterclaims; and (3) the counterclaims are futile because they fail to state a claim upon which relief can be granted. (D.I. 152; D.I. 158) The court will consider each in turn.

### A. Undue Delay

Defendants contend that their amendments are not the product of undue delay because they drafted their proposed counterclaims shortly after confirming the evidence to support the claims in October 2013, even though their motions were not filed until late January and early February 2014. (D.I. 146 at 12; D.I. 153 at 6) Plaintiffs argue that delay is undue because defendants had the documents relevant to the false marking claims as early as March 2013, "abandoned" both the false marking and inequitable conduct claims after the initial proposal in October 2013, and did not move to amend until after the close of fact discovery. (D.I. 152 at 11; D.I. 158 at 7-8, 17) The consideration of undue delay "requires that [the court] focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *see also Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008).

A finding of undue delay, without a finding of prejudice, may justify denial of a motion to amend "when the amendment is grounded on 'bad faith or dilatory motive, truly undue or unexplained delay . . . .'" *Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 369 (D. Del. 2006) (quoting *Heyl & Patterson Int'l, Inc. v. F.D. Rich*

8

*Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981)). Courts in this circuit have denied motions to amend based solely on undue delay when a long delay was unexplained. *See Lorenz v. CSX Corp.*, 1 F.3d 1406 (3d Cir. 1993) (affirming denial to amend where the district court made no finding of prejudice but leave to amend was filed nearly two years after the prior amendment); *USX Corp. v. Barnhart*, 395 F.3d 161 (3d Cir. 2004) (affirming denial of leave to amend on the ground of unreasonable delay where the movant waited more than three years to amend).

### 1. False marking, false advertising, and deceptive trade practices

Sun filed its motion to amend on January 31, 2014, and the Henkel defendants filed their motion to amend on February 7, 2014, nearly three months after they initially sent their proposed amended complaints to plaintiffs and two weeks after the close of fact discovery. Defendants assert that they believed that plaintiffs had agreed to stipulate to their amendments based on their correspondence in October and, consequently, did not file a motion to amend until plaintiffs indicated that they would not stipulate to the proposed amendments on January 27, 2014 (for the Henkel defendants) and January 12, 2014 (for Sun). (D.I. 156 at 9; D.I. 162 at 3)

Even given this explanation, however, the court notes that between October and January, neither the Henkel defendants nor Sun contacted plaintiffs regarding the stipulation, the Henkel defendants did not draft a stipulation themselves, and Sun did not draft and circulate a stipulation until January 6. Furthermore, the Henkel defendants were in possession of the relevant documents they rely upon in their false marking, false advertising, and deceptive trade practice counterclaims since May 2013,

9

and Sun was in possession of the documents relevant to its false marking claims since June 2013. (D.I. 152 at 11; D.I. 158 at 17) Neither contacted plaintiffs nor drafted the proposed amendments until October 2013. (*Id.*) Given the lack of proper justification for defendants' failure to move to amend to add counterclaims sooner, defendants' delay is undue in this regard.

### 2. Unenforceability due to inequitable conduct

With respect to Sun's inequitable conduct counterclaim, Sun obtained the information relevant to this claim in early October 2013, one week before raising the claim. (Civ. No. 12-651, D.I. 153 at 6) The court, therefore, finds that this does not constitute undue delay.

### B. Prejudice

The determination of prejudice "requires that [the court] focus on the hardship to the [non-movant] if the amendment were permitted" and may include "additional discovery, cost, and preparation . . . ." *Cureton*, 252 F.3d at 273.

### 1. False marking, false advertising, and deceptive trade practices

Defendants assert that plaintiffs will not be prejudiced by the proposed false marking amendments because plaintiffs already have internal information regarding the manufacturing and marking of their Dropps products, plaintiffs were already obligated to produce documents relevant to Dropps' water content, ingredients, and manufacturing, and plaintiffs have been on notice of these issues since defendants sent the proposed amendments in October 2013, before the end of discovery. (D.I. 146 at 13; D.I. 153 at 8) Plaintiffs aver that the false marking claims were unexpected, and they did not have

10

the opportunity to conduct discovery on these issues because defendants' motions to amend were filed so late in the discovery process. (D.I. 152 at 11-12; D.I. 158 at 18)

Although plaintiffs may have had information relevant to the false marking claims on file prior to the proposal of the amendment, plaintiffs did not have the opportunity to review and vet this evidence for discovery purposes in the context of false marking claims. To allow defendants to amend their counterclaims to add claims of false marking without providing plaintiffs opportunity for discovery would be unfairly prejudicial to plaintiffs.

### 2. Unenforceability due to inequitable conduct

Plaintiffs agreed to stipulate to nearly identical claims in the Henkel and Aqua Chempacs cases in August 2013, far before the close of fact discovery; consequently, plaintiffs have had adequate opportunity to take discovery on the relevant issues. Furthermore, Sun asserted the underlying claims supporting inequitable conduct on August 1, 2013 in its supplemental invalidity contentions by asserting anticipation based on Mr. Cicini's role in inventorship and public use. (Civ. No. 12-651, D.I. 162 at 4; Civ. No. 12-651, D.I. 154, ex. J) This early assertion provided plaintiffs the opportunity to conduct discovery on the inequitable conduct issue. The court finds that plaintiffs are not unfairly prejudiced by this amendment.

### C. Futility

Defendants assert that their motions to amend should be granted because their proposed amended counterclaims are not futile. An amendment is futile when it "fails to state a claim upon which relief can be granted, or 'advances a claim or defense that

11

is legally insufficient on its face.'" *Bigband Networks, Inc. v. Imagine Commc'ns, Inc.*, 2010 WL 2898286, at *1 (D. Del. July 20, 2010) (quoting *Koken v. GPC Int'l, Inc.*, 443 F. Supp. 2d 631, 634 (D. Del. 2006)); *see also Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 2013 WL 571801 (D. Del. Feb. 13, 2013) (denying motion for leave to amend complaint because amendment would be futile). A "proposed amendment is not futile [where it] would withstand a motion to dismiss." *Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 545 (3d Cir. 2012).

### 1. False marking

False marking claims brought under 35 U.S.C. § 292 are held to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1309 (Fed. Cir. 2011). To establish a claim for false marking under this section, the claimant must demonstrate two elements: (1) that the defendant marked an unpatented article; and (2) that the defendant intended to deceive the public. *Brinkmeier v. Graco Children's Prods. Inc.*, 767 F. Supp. 2d 488, 494 (D. Del. 2011). Under the America Invents Act ("AIA"), the claimant must also show that "it suffered a competitive injury as a result of the false marking." *Hall v. Bed Bath & Beyond, Inc.*, 705 F.3d 1357, 1373 (Fed. Cir. 2013); *see* 35 U.S.C. § 292(b).

#### a. Intent to deceive

The *BP Lubricants* court squarely rejected the notion that a complaint alleging false marking is sufficient when it "only asserts conclusory allegations that a defendant is a 'sophisticated company' and 'knew or should have known'" that the product was falsely marked. 637 F.3d at 1309. That is, "a complaint must . . . provide some

12

objective indication to reasonably infer that the defendant was aware" of the false marking.[6] *Id.* at 1311. This is because "[i]ntent to deceive . . . is established in law by objective criteria," and the inference of fraudulent intent may only be drawn upon "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity." *Id.* (quoting *Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005)). The *BP Lubricants* court also noted that "'the bar for proving deceptive intent in false marking cases is particularly high,' requiring that [claimants] show 'a purpose of deceit, rather than simply knowledge that a statement is false.'" *Id.* at 1313 (quoting *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362-63 (Fed. Cir. 2010)).

Defendants allege that plaintiffs intended to deceive the public because the Dropps products were marked with the '319 patent even though plaintiffs' employees knew that the liquid cleaning concentrate formulas before packaging contained greater than 7.5% water content. (Civ. No. 12-650, D.I. 145, ex. 1 at 49-50, ¶¶ 98-99; Civ. No. 12-651, D.I. 152, ex. 1 at 29, ¶¶ 61-68; *see also* Civ. No. 12-650, D.I. 147, exs. A - D; Civ. No. 12-651 D.I. 154, exs. K, L (indicating that the Dropps formulations contained between 7% and 9% water)) Although these allegations are more specific than bare assertions that plaintiffs "knew or should have known" of the false marking, they do not rise to the heightened pleading standard required under Rule 9(b). Whether "7.5% water content" reflects the amount of water in the pre-packaged formulation or the

---

[6] Although the *BP Lubricants* court addressed intent to deceive in false marking cases in the context of patent expiration, it is analogous to this case. Both situations regard a product not being covered by the patent marked on its packaging, either because the patent expired (as in *BP Lubricants*) or because the product may not be covered by the patent's claims (as in this case).

13

completed packets has been contested during claim construction. In this respect, it is unclear whether the Dropps products are in fact covered by the '319 patent. Furthermore, defendants fail to plead sufficient objective facts to infer an intent to deceive, as required under Rule 9(b). The *BP Lubricants* court and other courts in this circuit have noted examples of objective indicia of an intent to deceive.[7] In this case, however, defendants only generally plead that plaintiffs knew that the Dropps products were not covered by the '319 patent, and falsely marked the products to gain a competitive advantage in the laundry products market.[8] (*See* D.I. 145, ex. 1 at 42-43, ¶¶ 63, 66-67; D.I. 152, ex. 1 at 29, ¶¶ 61, 65, 67) Such allegations only objectively demonstrate knowledge that the products were falsely marked, not the requisite "purpose of deceit" necessary for defendants to have sufficiently pled their false marking claim.

---

[7] The Federal Circuit notes that intent to deceive can be reasonably inferred in patent expiration cases, for example, by allegations that specific individuals knew that the patent had expired, or that the false marker "sued a third party for infringement of the patent after the patent expired or made multiple revisions of the marking after expiration." *BP Lubricants*, 637 F.3d at 1312. *See also Rogers v. Conair Corp.*, Civ. No. 10-1497, 2011 WL 1809510, at *2 (E.D. Pa. May 12, 2011) (finding intent to deceive sufficiently pled through allegations that the USPTO had sent letters to the false marker indicating that patent applications had been abandoned, which allowed the court to reasonably infer that the false marker was aware that the products marked with the patents were in fact not patented).

[8] Although the court notes that defendants have presented evidence of plaintiffs' intent to deceive by falsely marking Dropps with the '319 patent (D.I. 147, ex. D; D.I. 154, ex. L (email from Cot'n Wash CEO Jonathan Propper, stating "[W]e now have . . . examples of . . .getting around the patent that we license. Dropps has more than 7.5% water content . . . .), defendants fail to plead these facts objectively and with particularity as required by Rule 9(b). Sun's complaint does specifically identify that Propper had knowledge that the Dropps product was not covered by the patent, while the Henkel defendants' does not. (*See* Civ. No. 12-651, D.I. 152, ex. 1 at 29, ¶ 61)

14

### b. Competitive injury

Neither the Federal Circuit nor this court have yet addressed the standard for alleging competitive injury under the AIA's amendments to § 292. Some courts have presumed competitive injury when plaintiffs and defendants compete. *See, e.g., Ira Green, Inc. v. J.L. Darling Corp.*, Civ. No. 3:11-05796, 2011 WL 6218146 (W.D. Wash. Dec. 5, 2011) (applying the Ninth Circuit's Lanham Act presumption of competitive injury when the parties are direct competitors to the patent marking context); *Fasteners for Retail Inc. v. Andersen*, Civ. No. 11 C 2164, 2011 WL 5130445 (N.D. Ill. Oct. 28, 2011) (finding competitive injury to be sufficiently pled by alleging that the false marking "is likely to, or at least has the tendency to, discourage and deter persons and companies, such as K International, from commercializing competing products and deters consumers from using competing products"). Other courts have suggested that "even when the § 292 claimant and defendant are competitors, that fact alone does not create a plausible claim of competitive injury." *Introsan Dental Products v. Dentsply Tulsa Dental LLC*, Civ. No. 09-3111, 2012 WL 3011830, at *5 (D. Md. July 20, 2012).

To bring a cognizable claim for competitive injury, "[d]efendant must allege sufficient facts to plausibly establish that, as a result of [plaintiffs'] mismarking . . . , [d]efendant's ability to compete against [p]laintiffs in the marke[t] for purchasers of such products was impaired, resulting in tangible economic loss to [d]efendant." *Fisher-Price, Inc. v. Kids II, Inc.*, Civ. No. 10-00988, 2011 WL 6409665, at *9 (W.D.N.Y. Dec. 21, 2011); *see also Rogers v. Conair Corp.*, Civ. No. 10-1497, 2012 WL 1443905, at *4 (E.D. Pa. April 25, 2012) ("To establish standing under the Amendment [to § 292],

15

[claimant] must allege a tangible economic loss caused by the illegal competitive means (i.e., the false patent marking).").

Defendants assert that they have suffered competitive injury because they compete with plaintiffs in the laundry products market and plaintiffs' false marking has caused defendants to suffer "lost sales, loss of market share, loss of business opportunities, [and] loss of good will." (D.I. 145, ex. 1 at 50-51, ¶ 101; D.I. 152, ex. 1 at 30, ¶ 74) Although specific instances of competitive injury do not need to be pled to state a claim for false marking, defendants' conclusory allegations do not sufficiently indicate a causal connection between plaintiffs' alleged false marking and defendants' alleged injury. As in Rogers, where the court found that plaintiff failed to plead sufficient facts to indicate a "plausible causal connection" between the alleged false marking and the alleged injury, 2012 WL 1443905, at *4, this court similarly finds that defendants have not plausibly demonstrated that plaintiffs' false marking of Dropps with the '319 patent caused defendants to suffer competitive injury. In light of the foregoing, defendants' proposed amended counterclaims of false marking fail to state a claim and, therefore, are futile.[9] Defendants' motions to amend are denied in this regard.

### 2. Unenforceability due to inequitable conduct

"To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense, Inc. v.*

---

[9] The Henkel defendants fail to allege any facts in relation to their counterclaims of false advertising and deceptive trade practices, relying solely on the allegations set forth in their false marking counterclaim. (See Civ. No. 12-650, D.I. 145, ex. 1 at 51, ¶¶ 104-11; *id.* at 53, ¶ 114-16) As they fail to state a claim of false marking, the Henkel defendants also fail to adequately plead cognizable counterclaims of false advertising and deceptive trade practices. These amendments are also futile.

16

*Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). In a case involving nondisclosure of information, the accused infringer must prove by clear and convincing evidence that the applicant knew of the information, "knew that it was material, and made a deliberate decision to withhold it." *Id.* "[A]s a general matter, the materiality required to establish inequitable conduct is but-for materiality." *Id.* at 1291. With respect to intent, "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. However, to meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Id.* (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).

Of course, the standard for proving inequitable conduct is a more rigorous one than the standard for pleading inequitable conduct; apparently, even the Federal Circuit has been tempted to confuse the same. *See, e.g., Pressure Prods. Med. Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1320 (Fed. Cir. 2010) ("[T]his court has issued significant opinions requiring specific and demanding showings of evidence before a party may **assert** the defense of inequitable conduct," citing *Star Scientific*, 537 F.3d at 1365, a case where the district court's final judgment of inequitable conduct was under review) (emphasis added). Accordingly, the proper standard of review is that articulated in *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), to wit, that "Rule 9(b) requires the identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1327.

Sun contends that the patent applicants: (1) misrepresented that Lawrence

17

Dickler was an inventor of the '319 patent and failed to identify Mr. Cicini as an inventor; (2) failed to disclose pieces of relevant prior art; and (3) failed to disclose that Mr. Cicini demonstrated the product claimed in the '319 patent publicly more than one year prior to the filing of the patent application. (Civ. No. 12-651, D.I. 153 at 20; see Civ. No. 12-651, D.I. 152, ex. 1 at 25-28, ¶¶ 39-53) The court concludes that the proposed amendment satisfies the above pleading standard by identifying the "who" (Civ. No. 12-651, D.I. 152, ex. 1 at 25, ¶¶ 39-40), the "what" (id. at 25-27, ¶¶ 42, 44, 46-47, 50-51), the "when" (id. at 23-26, ¶¶ 30-32, 34, 39-40, 43, 45), the "where" (id. at 23-24, ¶¶ 30, 32, 34), and the "how" (id. at 25-27, ¶¶ 40, 42-45, 47-49, 51-53) of the alleged material misrepresentations committed before the USPTO. The fact that plaintiffs disagree with the factual representations made by Sun is irrelevant, as the court is not required to judge the merits of the parties' respective positions at this stage of the proceedings. Therefore, Sun's counterclaim of inequitable conduct before the USPTO is not futile. Sun's motion to amend is granted in this regard

## V. CONCLUSION

For the foregoing reasons, the court denies the Henkel defendants' motion for leave to file a second amended answer, affirmative defenses, and counterclaims. The court denies Sun's motion to amend its answer, affirmative defenses, and counterclaims with respect to the false marking counterclaim, and grants Sun's motion to amend with respect to the inequitable conduct counterclaim. (D.I. 145; D.I. 152) An order shall issue.

18