IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| COT'N WASH, INC. and<br>BIG 3 PACKAGING, LLC,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>HENKEL CORPORATION,<br>THE DIAL CORPORATION, and<br>HENKEL CONSUMER GOODS INC.,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 12-650-SLR |
| COT'N WASH, INC. and<br>BIG 3 PACKAGING, LLC,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>THE SUN PRODUCTS<br>CORPORATION,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 12-651-SLR |

**MEMORANDUM ORDER**

At Wilmington this 29th day of August, 2014, having heard argument on, and having reviewed the papers submitted in connection with, the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language of U.S. Patent No. 6,037,319 ("the '319 patent") shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH*

*Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), as follows:

1. **"[L]ess than 7.5 wt. % water"[1] and "[less than 5.0 wt. % water]:"[2]** "The measurable water content, as formulated, of the liquid cleaning concentrate in the water-soluble container is less than 7.5 wt. % [less than 5.0 wt. %] of the concentrate, represented by the formula: [(Weight of Measurable Water in the Concentrate)/(Total Weight of the Concentrate)] < 0.075 [< 0.050]."[3]

The specification and the prosecution history indicate that the inventor believed his invention to include a cleaning concentrate comprising a water content as formulated, ie. to be measured before being placed in the water-soluble container. The specification refers to water content at the time the liquid cleaning concentrates are formulated or prepared, explaining that, "[t]he liquid cleaning composition of the invention is formulated in a manner which makes it compatible with the water-soluble film for purposes of packing, shipping, storage, and use." ('319 patent, 3:37-40)[4] The specification further explains that, "[i]t is preferred to limit the amount of water in the liquid cleaning concentrate to less than 10 wt. % of the composition." (*Id.* at 3:42-44) It continues on to discuss embodiments where "it is preferred to limit the amount of water

---

[1] Claim 1.

[2] Claim 3.

[3] Calculated by dividing the weight of measurable water in the liquid cleaning concentrate by the total weight of the concentrate, and multiplying this figure by 100.

[4] Language identical to that in U.S. Patent. No. 4,973,416 to Kennedy ("Kennedy") (JA162), referenced in the patent (*see* '319 patent, 3:42-49) and the prosecution history. All references to the Joint Appendix (JA) are to Civ. No. 12-650, D.I. 112 and Civ. No. 12-651, D.I. 135.

2

to less than 7.5 wt. % or less than 5 wt. %." (*Id.* at 3:44-45) Additionally, thirteen of the fourteen examples provided indicate that the cleaning concentrate "is prepared by mixing the following ingredients." (*See id.* at 5:5-8:44 (examples 1-13)) Example 1, the only example referring to a water percentage, further discusses "combining the foregoing ingredients" (*Id.* at 5:23), and example 14 explains that "[t]he compositions of [e]xamples 1-13 are packaged in water-soluble films . . . ." (*Id.* at 8:47-48) Dependent claims 9-14 and 36-41, which correspond to these examples further inform the court's reading of the patent as they address the formulation of the cleaning concentrate. (*Id.* at 9:31-65; 11:32-12:6)

In arguing that Kennedy did not "contain an enabling disclosure of water-soluble packets containing less than 10 wt. % water,"[5] applicants asserted that "Kennedy clearly teaches away from applicants' claimed invention in teaching that stable cleaning products according to its disclosure cannot be prepared with less than about 10 wt. % water." (JA73) Kennedy and other prior art referenced during prosecution describe the water content as formulated. (*See* JA164 at 6:9-12 ("A liquid laundry detergent was prepared by admixing the following four premixes to provide a composition having a total water content of 16.29% by weight of the composition."))

The court further notes that the water content refers to "free water," added when the concentrate is formulated. The specification supports this construction. Only example 1, of the fourteen examples provided in the patent, includes water as a component of the cleaning concentrate. (*See* '319 patent, 5:5-26) This example, which

---

[5]Claim 1 was initially written to include "less than 10 wt. % water."

3

specifically requires 2.00% water as a separate ingredient, corresponds to claim 2, which recites "wherein said cleaning concentrate comprises not more than 2 wt. % water." (*Id.* at 9:15-16) Additionally, during prosecution, applicants noted that support for limiting the amount of water in the concentrate to not more than 2 wt. % "appears in the original disclosure at, e.g., [e]xample 1." (JA84)

2. **"Liquid cleaning concentrate:"**[6] "A composition that, when diluted, is suitable for removing dirt or impurities, and which is in a state of matter between a solid and a gas, and which has a definite volume but no definite shape. The composition may include a suspension of insoluble particles." The specification explains that "liquid cleaning compositions" are "capable of being easily applied in concentrated solutions or dispersions to soiled areas to be cleaned . . . ." ('319 patent, 1:10-16)

The meaning that inventors intended to give this limitation has a long and interesting history. After allowance of the application leading to the '319 patent, and after applicants had paid the issue fee, the PTO issued a "Supplemental Notice of Allowability" distinguishing the invention from U.S. Patent No. 4,416,791 to Haq. In deeming the subject claims patentable over the teaching of Haq, the examiner explained that:

> The subject claims require a liquid cleaning concentrate of which the term of limitation "concentrate" is construed as a solution limited to a solvent(s) component and a dissolved substance(s) component in contradistinction to the slurry contained by the uncoated sachet according to the Haq '791 prior art . . . .

(JA94) In response, applicants filed a "Petition for Withdrawal from Issue," arguing that the

---

[6]Claim 1.

4

Supplemental Notice of Allowability included "an unprecedented interpretation of the recited term 'concentrate' [which] was made the basis for patentability over Haq . . . ." (JA98) In the petition, applicants argued "it was a mistake on the part of the Office to reinterpret the claims after allowance in an attempt to justify the allowance and avoid the more burdensome process of issuing a rejection after allowance and reopening prosecution." (JA99) In support of their understanding of their patent, applicants made several arguments against the examiner's construction, including:

> First, the term "concentrate" was never defined in the original disclosure as being limited to solutions. The term is part of the phrase "liquid cleaning concentrate," in which it merely defines a liquid composition that is subsequently diluted (upon degradation of the container) to provide a final cleaning liquid. . . . Second . . . even if the Office were correct that the term "concentrate" requires a cleaning solution, the transitional term "comprising" opens claim 1 to insoluble particles as an additional element in the solution, and thus opens claim 1 to slurries.

(JA98-99) Applicants further argued that "the allegedly anticipating composition of the Haq patent is not a slurry as alleged, but rather is a paste, and accordingly, is not a **liquid** cleaning concentrate anticipating the instant invention." (*Id.*) (emphasis in original) Additionally, "[i]t is also a mistake for the Office to assume that claim 1 distinguishes over Haq on the basis that Haq discloses a slurry in an uncoated packet, whereas [a]pplicants' claim 1 is limited to liquid solutions in uncoated packets." (JA99-100)

On September 20, 1999, the PTO dismissed the petition and provided applicants with several options, one of which included filing "a continuing application wherein any desired claims or issues of claim breadth and meaning may be presented for review by the examiner." (JA104-06) The examiner also noted that "petitioner has exercised, by way of

5

the instant communication (and may still exercise), his right under 37 CFR 1.104(e), to place his comments on the record in reply to the examiner's statements." (JA105) Applicants did not file a continuing application. Instead, on October 22, 1999, applicants filed "Comments on Statement of Reasons for Allowance," "[i]n response to the Reasons for Allowance attached to the May 18, 1999 Supplemental Notice of Allowability **issued after payment of the issue fee,** and the September 20, 1999 Decision on Petition . . . ." (JA227) (emphasis in original) Applicants noted that:

> As indicated by the attached Rule 132 Declaration of J. Barry Ruck, Ph.D. (incorporated by reference herein) and the August 9, 1999 Petition for Withdrawal from Issue (incorporated by reference herein), and contrary to the Reasons for Allowance, the allegedly anticipating composition of the Haq patent is not a slurry as alleged, but rather is a paste. The claimed invention is directed to a cleaning packet comprising a **liquid** cleaning concentrate, not a cleaning paste. On the other hand, slurries are encompassed by the claimed recitation of a "liquid cleaning concentrate."

(JA227-28) (emphasis in original) Co-inventor Dr. Ruck's declaration reads the same. (See JA229-30) In sending the comments to applicants, applicants' patent attorney noted that "[t]hese documents will be placed in the file of the impending patent for future reference, but will not be considered by the PTO." (JA225)[7] The PTO later abandoned the application on November 11, 1999 for "Applicants' failure to timely file new formal drawings." (See JA110) Applicants responded explaining that the "application contains no drawings" and requesting that the PTO revive the application and issue it as a patent. (Id. at JA110-11) The PTO acknowledged that the Notice of Abandonment was sent in

---

[7]Produced by plaintiffs in this litigation, but not included in the file history plaintiffs produced in this case. (Civ. No. 12-651, D.I. 95 at 25 n.9) The face of the documents and JA225 show that the documents were submitted to the PTO. (See JA225-30)

6

error. (*See id.* at JA116)

"[A]n Examiner's Statement of Reasons for Allowance 'will not necessarily limit a claim.'" *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005) (internal quotations omitted). "Consequently, an applicant's silence regarding statements made by the examiner during prosecution, without more, cannot amount to a 'clear and unmistakable disavowal' of claim scope." *Id.* (citing *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373 ("Prosecution history . . . cannot be used to limit the scope of a claim unless the **applicant** took a position before the PTO.")) (emphasis in original).

In *Salazar*, the examiner **only** discussed the "elastic" limitation in the reasons for allowance in distinguishing the application from the prior art, explaining that the "nylon" in the prior art was not considered elastic. *Id.* at 1343-44. The prosecution history did not discuss the "elastic" limitation otherwise. *Id.* Applicant did not respond. *Id.* at 1343. The applicable regulations stated that, "[f]ailure to file such a statement shall not give rise to any implication that the applicant or patent owner agrees with or acquiesces in the reasoning of the examiner." *Id.* at 1345. The district court construed "elastic" as "any material other than nylon" "find[ing] that the remarks in the Examiner's Statement of Reasons for Allowance 'amended the claim specifically to exclude nylon from the definition of 'elastic.'" *Id.* 1344-45. The Federal Circuit, however, determined the construction was improper because the "examiner's unilateral remarks did not alter the scope of the claim." *Id.* at 1347. "After all, the applicant has disavowed nothing." *See id.* at 1345.

Plaintiffs now argue that, "[a]lthough the Federal Circuit has held that silence in the

7

face of examiner's comments 'without more' in a Notice of Allowance may not constitute a disavowel of subject matter," they did "more" than simply acquiesce to examiner's comments. Specifically, because the PTO rejected the petition to reconsider the allowed claim scope and applicants declined to file a continuation application, plaintiffs contend that the awarded claim scope should be deemed accepted such that "liquid cleaning concentrate" is limited to the construction given by the examiner in the supplemental reasons for allowance. (See D.I. 75 at 24) The record, however, indicates that applicants did not decline to comment but, instead, twice argued for the proper construction, and even submitted a declaration by an expert. Applicants' arguments apprise the public of the metes and bounds of the claimed invention. The court declines to allow plaintiffs, now in the face of litigation, to fall back on the examiner's interpretation of the invention, having argued against it previously.

3. **"Water soluble:"**[8] "Substantially dissolvable in response to being contacted with water." This is supported by the specification, which states that, "[f]or purposes of the invention, a water-soluble material is defined as a material which substantially dissolves in response to being contacted with water." ('319 patent, 2:61-63) In light of the disclosure in the specification, "substantially dissolves" is further construed to mean, "ranging from partial solubility in hot water to complete solubility in cold water." (See id. at 3:1-7)

4. **"Film:"**[9] "A thin material." This is consistent with the language of the claim, which recites that "said cleaning concentrate comprises a single layer film," where the

---

[8]Claim 1.

[9]Claim 1.

8

container is previously identified as being water soluble. (*See id.* at 9:9-13) The specification explains that "[i]t is preferred that the water-soluble material be in the form of a film," and that "[s]uitable materials for the film include polyvinyl alcohol . . . ." (*Id.* at 2:64-66)

5. **"A polyvinyl alcohol film:"**[10] "A thin material based on polyvinyl alcohol."

The court has provided a construction in quotes for the claim limitations at issue. The parties are expected to present the claim construction to the jury consistently with any explanation or clarification herein provided by the court, even if such language is not included within the quotes.

                                                                    United States District Judge

---

[10]Claim 7.